## W. W. JOHNSON v. THE STATE.

### No. 623. Decided May 25, 1910.

**1.—Aggravated Assault—Continuance—Want of Diligence.**

Where, upon trial of aggravated assault, defendant's second application for continuance failed to state that the continuance was not sought for delay, there was no error in overruling same; besides the same did not show sufficient diligence.

**2.—Same—Sufficiency of the Evidence—Premeditated Design—Great Bodily Injury.**

Where, upon trial of aggravated assault, the information alleged that the same was committed with premeditated design and by the use of means calculated to inflict great bodily injury, and the evidence, though conflicting, sustained the allegations, the conviction will not be disturbed.

Appeal from the County Court of Fannin. Tried below before the Hon. H. A. Cunningham.

Appeal from a conviction of aggravated assault; penalty, a fine of $50.

The opinion states the case.

*McGrady & McMahon,* for appellant.—On question of continuance: Preston v. State, 4 Texas Crim. App., 186; Myers v. State, 7 Texas Crim. App., 640; Vickery v. State, 7 Texas Crim. App., 401.

On question of insufficiency of the evidence: Pinson v. State, 23 Texas, 579; Williams v. State, 1 Texas Crim. App., 90; Tucker v. State, 6 Texas Crim. App., 251; Williamson v. State, 5 Texas Crim. App., 485; McGrew v. State, 19 Texas Crim. App., 302; Herald v. State, 37 Texas Crim. Rep., 409; 3 Cyc., 1031, 1040, 1058.

*John A. Mobley,* Assistant Attorney-General, for the State.—On question of continuance in not alleging that it was not made for delay: Zumwalt v. State, 5 Texas Crim. App., 521; Peck v. State, 5 Texas Crim. App., 611; White v. State, 9 Texas Crim. App., 41.

DAVIDSON, Presiding Judge.—Appellant was convicted of aggravated assault, his punishment being assessed at a fine of $50, the affidavit and information charging the assault was committed with premeditated design and by the use of means calculated to inflict great bodily injury.

1. We are of opinion that the court did not err in refusing to grant a continuance. It was the second application. The diligence was, we think, not sufficient, and besides, the application fails to state that the continuance was not sought for delay.

2. The remaining question is suggested on the theory that the evidence is not sufficient to support the conviction. The State's evidence is to the effect that several parties were out on a fishing excursion and had been seining. About night appellant came to where the fishermen were and wanted to purchase fish. After discussing the matter the fishermen agreed to run their seine again and catch fish for appellant. When they began seining appellant was present and said he would hold the gun over the parties while they did the work, and there was also something said about stealing fish. The injured party, Roden, stated he told appellant that was a mighty broad assertion, especially as they were fishing for him. There came up a quarrel between the parties before they began the seining, and one of the parties present, Bergher, said that appellant and Roden should shake hands and let the matter go. Appellant said he would let it drop, but he would see Roden in hell before he would shake hands with him. After finishing seining the quarrel was renewed. Appellant went to his buggy and came back walking rapidly to where the parties were with a pistol in his hand, and said: "Stand back, boys; business is picking up." Appellant further said to the alleged injured party, Roden: "God-damn you, throw up your hands." Witness threw them up, whereupon appellant struck him over the head with his pistol, searched him, and carried him to his, appellant's buggy. The pistol was a 45-Colts. This witness swears that appellant struck him on the head twice with the pistol. Roden told appellant that he (appellant) could kill him but he could not eat him. He says he was doing nothing at the time appellant struck

him; that his hands were up, and he had nothing in them. Charley Bergher testified substantially as did Roden, the injured party. Bergher and Roden were brothers-in-law. There was some whisky in the crowd and the parties had been drinking. The quarrel came up over what appellant said. The parties had been friends to that time. The State's witness denied being drunk, and stated that he had his knife out whittling when the difficulty began, but did not have his knife in his hand when he was struck with the pistol. This is the State's case. Appellant's case, in substance, is that after defendant came to where the parties were fishing, he bought a fish from Bergher's son, and later Bergher accused appellant of stealing the fish. Appellant let him take it back. The crowd started to catch more fish, and appellant said, in answer to what somebody else had said, that "none of us would say anything about the fishing as we were all stealing fish." The injured party, Roden, said that was a broad assertion, and no man could say that he would steal. Appellant apologized and said it was in fun, and that he did not intend to hurt his feelings. They quarreled some more, but parties intervened. Roden, the injured party, had his knife out at the time. Appellant testified that he stopped at the lake where Roden and the others were fishing and bought a fish from Bergher's little son, paying him fifteen cents for it. Bergher and Roden were drunk. Bergher claimed that somebody stole the fish. Appellant said nothing in reply, as Bergher was drunk. Haynes, one of the parties, suggested that they catch some more fish, and suggested that Spies was gone and they could get all they wanted without having to divide with him, and for nobody to say anything about it. Appellant then said, "I guess nobody would, as we are all stealing them." Roden said it was a broad assertion and that nobody would say that he would steal. He was drunk and appellant paid no attention to him, but apologized and told him he did not mean any harm, and let it drop. Roden kept abusing appellant. Appellant told him if nothing would do him but a fight he could get it. The parties intervened and appellant went off to his buggy. Roden was carried off in a different direction. Under appellant's testimony Roden had his knife out at the time; he reached over in his buggy, got his pistol, and told the boys to stand back, that business was going to pick up if he tried to cut him with that knife. That Roden came to where appellant was, and he took the knife away from Roden; that Roden placed his hand behind him, and he had to reach around and get it. There was a little scuffle over the knife. Appellant denies striking Roden with the pistol or anything else, but told him to go away and sit down and behave himself or he would take him to town. Roden got up in appellant's buggy, and appellant shut up Roden's knife and pitched it over to him. Appellant was acting as deputy sheriff at the time of this difficulty.

The question is presented, does the evidence sustain the allega-

tion that the assault was committed with premeditated design and by the use of means calculated to inflict great bodily injury? We are of opinion, under the State's evidence, the jury were justified in finding the verdict they did. Under appellant's evidence, of course, the State had no case. The evidence was conflicting. The jury were the judges of the facts proved, the credibility of the witnesses, and the weight to be given the testimony. Under the testimony of Roden, which was corroborated by Bergher, there is evidence enough, we think, to show premeditation.

The judgment will therefore be affirmed.

*Affirmed.*